# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL GUTIERREZ,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social<br>Security Administration,<br><br>  Defendant. | Case No. ED CV 12-2097-SP<br><br>**MEMORANDUM OPINION AND ORDER** |

## I.
## INTRODUCTION

On November 30, 2012, plaintiff Manuel Gutierrez filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties' briefing is now complete, and the court deems the matter suitable for adjudication without oral argument.

Two issues are presented for decision here: (1) whether the Administrative Law Judge ("ALJ") properly assessed evidence regarding plaintiff's headaches in determining his residual functional capacity ("RFC"); and (2) whether the ALJ properly evaluated plaintiff's credibility.

Having carefully studied, inter alia, the briefs submitted by the parties and the Administrative Record ("AR"), the court finds that the ALJ properly considered the evidence regarding plaintiff's headaches, and the ALJ provided clear and convincing reasons for discounting plaintiff's credibility. Accordingly, the court affirms the Commissioner's decision denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was thirty-eight years old on the alleged disability onset date, has a high school education. *See* AR at 17, 38, 169. His past relevant work includes employment as a delivery truck driver and a security guard. *Id.* at 17, 57.

Plaintiff filed for DIB and period of disability on January 7, 2009 and for SSI on December 17, 2008. *Id.* at 169-178. In both applications, plaintiff alleged that he has been disabled since December 6, 2008. *Id.* at 169, 172. Plaintiff's applications were denied initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 71-95.

On May 5, 2011, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 32-47. The ALJ also heard testimony from a medical expert ("ME"), Dr. Samuel Landau, and a vocational expert ("VE"), David A. Rinehart. *Id.* at 48-61. On June 30, 2011, the ALJ affirmed the denial of plaintiff's request for benefits. *Id.* at 10-19.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 6, 2008. *Id.* at 12.

At step two, the ALJ found that plaintiff suffers from severe impairments

consisting of: obesity, obstructive sleep apnea, degenerative disc disease of the neck and lumbar spine with chronic strain and sprain, diabetes mellitus type 2, headaches, thrombocytopenia, and cerebrovascular accident with monoparesis. *Id.*

At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments, either individually or in combination, meet or medically equal the severity of any listing set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's RFC,[1] and determined that he can perform less than a full range of medium work as defined in 20 C.F.R. 404.1567(c) and 416.967(c). *Id.* at 13. The ALJ specifically found that plaintiff "can stand and/or walk two hours in an 8-hour workday with the use of cane as necessary; he can sit for eight hours in an 8-hour workday with normal breaks such as every two hours; he can lift and/or carry 35 pounds occasionally and 15 pounds frequently; he can occasionally stoop and bend; he can climb stairs, but he cannot climb ladders, work at heights, or balance; he can occasionally reach, grasp, handle, finger, or feel with his left hand and frequently with his right dominant hand." *Id.* The ALJ further found that plaintiff "can do occasional neck motion but should avoid extremes of motion; his head should be held in a comfortable position at other times." *Id.* The ALJ found that plaintiff "can maintain a fixed head position for 15-30 minutes at a time, occasionally." Finally, the ALJ found plaintiff "should work in an air-conditioned environment for temperature control." *Id.*

The ALJ found, at step four, that plaintiff is not capable of performing any

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

past relevant work. *Id.* at 17.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, plaintiff could perform jobs that exist in significant numbers in the national economy, including information clerk, telephone quotation clerk, and fundraiser II. *Id.* at 17-18. Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 18.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3, 27-30. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). However, "the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276

F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). But if the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

### A. The ALJ Properly Assessed Evidence of Plaintiff's Headaches When Determining His RFC

Plaintiff contends that the ALJ failed to properly assess evidence of plaintiff's headaches when determining his RFC. Pl's. Mem. at 3-5. For the reasons below, the court disagrees.

In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); *Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ found that plaintiff's headaches were a severe impairment (*see* AR at 12), but ultimately decided that plaintiff's headaches and other conditions were not severe enough to amount to a disability under the Social Security Act. *Id.* at 18. The ALJ explicitly considered plaintiff's headaches when determining his RFC, recognizing that plaintiff "testified that he gets six to seven headaches a day, every day," but also noting that the ME testified "there is no objective evidence to support the claim of headaches." *Id.* at 14. She also asked plaintiff for details about his headaches during the hearing. *Id.* at 46-47.

The ALJ's RFC determination is supported by substantial evidence in the record. First, Dr. Landau, the ME, testified he found no objective basis for plaintiff's headaches after having reviewed all of his relevant medical records. *Id.* at 55. As plaintiff notes, Dr. Landau did not reject the existence of the headaches due to lack of objective evidence, but instead testified that plaintiff "has headaches." *Id.* Dr. Landau further testified, however, that he took the headaches into account when opining on plaintiff's RFC. *Id.* The RFC found by the ALJ was the same as that opined by Dr. Landau, except the ALJ limited plaintiff to lifting lighter weights than the ME would have allowed, and the ALJ added limitations on hand usage. *See id.* at 13, 16, 54. Thus, given that the ALJ found plaintiff's headaches constituted a severe impairment (*id.* at 12), and given that the ALJ essentially adopted Dr. Landau's RFC that took plaintiff's headaches into account, the ALJ plainly also considered plaintiff's headaches when determining his RFC, and did not simply ignore this impairment due to lack of objective evidence as plaintiff suggests.

Second, the ALJ concluded that the determined RFC "is supported by the findings on physical and neurological examination recorded throughout the medical evidence of record, the objective medical findings, and the opinions of Drs. Woodard and Landau." *Id.* at 17. The objective evidence in the record – including evidence from doctors whose findings were favorably cited by the ALJ (*see id.* at

14-17) – did not suggest that plaintiff suffered from debilitating headaches. Although slightly before the alleged onset date of December 6, 2008, Dr. John Skubic's report dated September 16, 2008 fails to mention headaches under present complaints, and so too does Dr. Skubic's progress report dated August 14, 2008. *Id.* at 239, 245. Similarly, Dr. Peter Lue's report from December 8, 2008 indicates plaintiff reported "[n]o headache or dizziness." *Id.* at 274. Dr. Nathan Mjos reported that "patient denied any fevers, chills, headaches, or blurred vision" on December 15, 2008. *Id.* at 289. The reports of Drs. Charbel Aoun and Douglas Ziprick, who saw plaintiff on March 19 and 20, 2009 after his hospital admission, state plaintiff complained of pain in his arm and chest, but do not mention headaches. *Id.* at 337, 339. And Dr. John Woodward's report of a neurological evaluation on July 21, 2009 states plaintiff chiefly complained of low back pain and weakness on his left side, but makes no mention of headaches. *Id.* at 358. It is reasonable for the ALJ to expect headaches of a debilitating nature to be documented on a somewhat frequent basis in plaintiff's medical record. Thus, although the RFC determined by the ALJ plaintiff indicated she did not find plaintiff's headaches to be debilitating, substantial evidence in the record supports this conclusion.

This is not to say the record is devoid of evidence that plaintiff complained of and suffered from headaches. Plaintiff mentioned headaches in disability and function reports (*id.* at 187, 202), and some medical records from 2009-2010 noted plaintiff's headache conditions. *Id.* at 372, 376. But even assuming such evidence supported conflicting inferences as to whether the headaches were debilitating, "[i]t is then solely the province of the ALJ to resolve the conflict." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). The ALJ's RFC determination after having explicitly considered evidence of headaches is well supported by the record, as outlined above. Further, the ALJ's conclusion is buttressed by the fact that at the hearing plaintiff himself testified that his headaches last ten minutes and then he

7

gets relief from using ice packs. AR at 47. Indeed, plaintiff fails to specify in what ways greater consideration of the headache evidence would have changed the ALJ's RFC determination. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1163 (9th Cir. 2008) ("So long as there remains 'substantial evidence supporting the ALJ's conclusions . . .' and the error 'does not negate the validity of the ALJ's ultimate conclusion,' such is deemed harmless and does not warrant reversal.") (quoting *Batson v. Comm'r*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

In sum, the ALJ properly assessed evidence of plaintiff's headaches when determining his RFC.

### B. The ALJ Did Not Err in Discounting Plaintiff's Credibility

In his second claim, plaintiff contends that the ALJ erred in assessing his credibility. Pl's. Mem. at 5-11. The court disagrees.

At the hearing, plaintiff testified that he injured his back in October 2008 and stopped working as a result. AR at 36. Plaintiff said that he drives if it is an emergency. *Id.* at 37. He also indicated that he takes his medications in the morning but gets tired from them, is able to take care of his own basic hygiene needs, but cannot help with any housework, cooking, or yard work. *Id.* at 39. He testified that he experiences pain when he stretches and if he walks too long and that with respect to social activities, he only goes to visit family about once a month. *Id.* at 40. Plaintiff reported that he sometimes watches television, does no reading, and used to fish but experiences major headaches, so he instead naps about four to five times a day, each nap lasting about an hour each. *Id.* at 40-41. He testified that he tries exercising in the pool, but his neck hurts so he only swims for 15-20 minutes, and he also reported sleep apnea. *Id.* at 42. He does not carry more than five pounds and does not do his own grocery shopping or his own laundry. *Id.* at 43. Plaintiff confirmed that he experiences headaches every day about six or seven times and obtains relief through ice packs. *Id.* at 46-47.

The ALJ found that while plaintiff's impairments could reasonably be

1  expected to cause the alleged symptoms, his statements regarding the intensity,
2  persistence and limiting effects were not credible to the extent they were
3  inconsistent with plaintiff's RFC. *Id*. at 15.  The ALJ provided several reasons for
4  devaluing plaintiff's credibility: (1) inconsistencies in plaintiff's testimony about
5  his sleeping patterns; (2) Dr. Landau's testimony that there was no objective
6  evidence to support the claim of headaches; (3) inconsistency between plaintiff's
7  allegation that he cannot use his left arm and hand with the findings in a medical
8  report; and (4) inconsistency between plaintiff's claimed need to use a cane or
9  walker and the medical finding that he needs no cane. *Id.* at 14, 16.
10         An ALJ must make specific credibility findings, supported by the record.
11  Social Security Ruling ("SSR") 96-7p.2.  To determine whether testimony
12  concerning symptoms is credible, an ALJ engages in a two-step analysis.
13  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, an ALJ must
14  determine whether a claimant produced objective medical evidence of an underlying
15  impairment "'which could reasonably be expected to produce the pain or other
16  symptoms alleged.'"  *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344
17  (9th Cir.1991) (en banc)).  Second, if there is no evidence of malingering, an "ALJ
18  can reject the claimant's testimony about the severity of her symptoms only by
19  offering specific, clear and convincing reasons for doing so."  *Smolen v. Chater*, 80
20  F.3d 1273, 1281 (9th Cir. 1996); *see Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th
21  Cir. 2003).  An ALJ may consider several factors in weighing a claimant's
22  credibility, including: (1) ordinary techniques of credibility evaluation such as a
23  claimant's reputation for lying; (2) the failure to seek treatment or follow a
24  prescribed course of treatment; and (3) a claimant's daily activities.  *Tommasetti*,
25  533 F.3d at 1039; *Bunnell*, 947 F.2d at 346-47.
26         Here, one of the reasons the ALJ gave for discounting plaintiff's credibility
27  was that the headaches he complained of were unsupported by the objective medical
28  evidence.  The Ninth Circuit has consistently held, however, that an ALJ may not

9

discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence. *Smolen*, 80 F.3d at 1282 (ALJ may not reject testimony simply because there is no showing that impairment can reasonably produce degree of symptom alleged). Because the ALJ's discrediting of plaintiff based on a lack of objective evidence alone is not clear and convincing, the court turns to the remaining reasons the ALJ articulated for discrediting plaintiff's testimony to determine whether they themselves are clear and convincing.

The ALJ claimed to identify inconsistencies with regard to plaintiff's allegations about sleep, use of a cane, and the ability to use his left arm and hand, but the first of these is not a genuine inconsistency. With regard to sleep, plaintiff testified that his medications made him sleepy, causing him to take four or five one-hour naps each day, but also that he had sleep apnea so he had trouble sleeping at night. AR at 39, 41, 42. The ALJ devalued plaintiff's credibility because she regarded the comments as inconsistent. But as plaintiff argues, the taking of one-hour naps during the day time resulting primarily from medication side effects is not at all inconsistent with the inability to sleep throughout the night for multiple hours on end. *See* Pl's. Memo at 9. The ALJ's finding of inconsistency regarding sleep is thus not clear and convincing.

The ALJ also found that Dr. Woodard's finding that plaintiff does not require assistive devices for walking is "counter to claimant's allegation that he needs a walker." AR at 16. In a January 15, 2009 function report, plaintiff stated he uses a walker that was prescribed by a doctor. *Id.* at 201. In a later disability report, plaintiff stated he started using a cane in approximately August 2009 due to back pain making it difficult for him to walk. *Id.* at 207. But in a report of a neurological evaluation conducted on July 21, 2009, Dr. Woodard found plaintiff "does not require assistive devices for walking on the basis of his neurological status." *Id.* at 360. Dr. Woodard noted that plaintiff "carries a cane but he does not appear to

require the cane on the basis of neurological status. There may be some exaggerated fear of falling." *Id.* at 359. The ALJ reasonably discounted plaintiff's credibility based on the inconsistency she found between plaintiff's claimed need of a walker or cane and Dr. Woodard's findings. *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (ALJ may consider inconsistencies between plaintiff's testimony and testimony from physicians regarding symptoms) (citation omitted). Even if plaintiff genuinely believes he needs a cane, Dr. Woodard's finding that plaintiff's beliefs regarding his physical limitations do not necessarily correspond with reality provides a clear and convincing reason for the ALJ to discount plaintiff's claims regarding his limitations.

Similarly, with respect to plaintiff's claimed inability to use his left arm and hand, the ALJ cited a contradictory medical report from Dr. Mjos, which, the ALJ found, "shows the claimant is exaggerating his symptoms and limitations," thus undermining his credibility. AR at 14-15. Plaintiff stated in a disability report that he is "unable to use left arm and hand, due to stroke." *Id.* at 183. But Dr. Mjos reported that an MRI from December 2008 "did not reveal any ischemic changes nor any hemorrhagic changes suggestive of a stroke." *Id.* at 290. During his hospitalization plaintiff showed "improving muscle strength in his left upper extremity," and upon discharge "demonstrated +3 to +4/5 muscle strength in both left upper extremity and left lower extremity." *Id.* Neurology found plaintiff's "left-sided hemiparesis was most likely functional and that he required no further neurologic workup," but "suggested a psychiatric evaluation." *Id.* The ALJ reasonably found that Dr. Mjos's report contradicts plaintiff's claim that he is unable to use his left arm and hand, and the suggestion of a psychiatric problem echos Dr. Woodard's finding that plaintiff may have an exaggerated perception of the extent of his physical ailments.

Although the alleged sleep inconsistency was not clear and convincing, the other reasons articulated by the ALJ were. On balance, the legitimate reasons the

ALJ provided for discounting plaintiff's credibility were sufficiently clear and convincing to support the ALJ's decision. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing."). The court thus finds the ALJ did not err in discounting plaintiff's credibility.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

Dated: October 18, 2013

*(signature)*

SHERI PYM
UNITED STATES MAGISTRATE JUDGE